NOT RECOMMENDED FOR FULL-TEXT PUBLICATON
File Name: 14a0450n.06

No. 13-5331

**FILED**
Jun 20, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DONALD WALLACE, )
)
    **Petitioner-Appellant,** )
) ON APPEAL FROM THE
) UNITED STATES DISTRICT
v. ) COURT FOR THE MIDDLE
) DISTRICT OF TENNESSEE
DAVID SEXTON, Warden, )
)
    **Respondent-Appellee.** ) **OPINION**
)

Before: MOORE and KETHLEDGE, Circuit Judges, and TARNOW, District Judge.[*]

    **KAREN NELSON MOORE, Circuit Judge.** Donald Wallace was convicted of second-degree murder for the death of his girlfriend, Melinda Sue Perrin. Witnesses observed Wallace and Perrin fighting in his car, and soon after they heard a shotgun blast and saw bullets strike Perrin in the neck and head. At trial, Wallace's counsel rejected Wallace's preferred theory of defense, that the shotgun discharged accidentally when he struggled with Perrin over control of the gun, and instead argued that Perrin had inadvertently shot herself. Wallace was sentenced to the statutory maximum twenty-five years of imprisonment. He now petitions for a writ of habeas corpus, claiming that his trial counsel rendered constitutionally ineffective assistance by (1) failing to present witnesses and seek jury instructions to support his "accident" theory, (2) failing to object to the prosecutor's improper remarks during closing argument, and

---

    [*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

(3) failing to object to errors in his presentence report, which the judge relied upon in sentencing him to the statutory maximum.

We conclude that Wallace procedurally defaulted the majority of his claims because he failed properly to raise them before the Tennessee Court of Criminal Appeals during his post-conviction proceedings. However, Wallace fairly presented his improper-remarks claim to the Tennessee courts, which denied on the merits his petition for post-conviction relief. We cannot conclude that the Tennessee Court of Criminal Appeals's decision was contrary to or an unreasonable application of federal law. Accordingly, we **AFFIRM** the district court's denial of Wallace's petition for a writ of habeas corpus.

## I. BACKGROUND

On June 8, 1996, Donald Wallace and his girlfriend, Melinda Sue Perrin, drove to the home of Wallace's friend, Charles Morgan. While there, Wallace purchased a "sawed-off" shotgun from Morgan, asserting that "he needed the shotgun for protection because somebody was threatening to kill him." *State v. Wallace*, No. 01C01-9711-CC-00526, 1998 WL 670627, at *1 (Tenn. Crim. App. Sept. 30, 1998). Wallace believed his life was in danger because he owed money to a man named "Red," who had made threats against Perrin and Wallace's mother. Later that afternoon, he took the shotgun with him when he approached Red to attempt to settle the debt.

Shortly after 7:00 p.m., a vehicle pulled into the parking lot of J.T.'s Bait Shop. Several customers observed that the driver appeared to be holding a shotgun, and that he slapped a female passenger in the car. The bystanders then heard a loud boom coming from the car and

observed smoke leaking from the windows. Some saw the female passenger's head "exploding." *Id.* at *2. The driver backed the car out of the parking lot and drove away. As he did so, three witnesses heard a second shot.

The bystanders later identified Wallace as the driver and Perrin as the passenger. Perrin's body was recovered from a secluded area in the same county the next day. After the autopsy of Perrin's body, the medical examiner determined that Perrin had died from "a near shotgun wound" to the left side of her neck, and that, "based on the distance and angle of the gunshot wound, it would have been very difficult for the wound to have been self-inflicted." *Id.* at *3. Neither Wallace's vehicle nor the shotgun was ever recovered. On June 26, 1996, Wallace turned himself in to the authorities.

## A. Trial and Direct Appeal

Wallace was charged with premeditated, first-degree murder. He pleaded not guilty and stood trial. The state called as its first witness Charles Morgan, the man from whom Wallace purchased the shotgun. Before trial, Wallace had informed his counsel that Morgan told him that the shotgun had a "hair trigger." R. 17-14 (Post-conviction ("PC") Hr'g Tr. at 7) (Page ID #1767). To Wallace's knowledge, his counsel never contacted Morgan before trial to investigate the issue. *Id.* When Wallace's counsel asked Morgan on cross-examination whether the trigger mechanism was a hair trigger, Morgan responded that the shotgun did not have a hair trigger, but instead had a "normal pull," and that he had never told anyone that it had a hair trigger. R. 17-3 (Trial Tr. at 50–51) (Page ID #323–24). However, in a letter Morgan wrote to Wallace after trial, he recalled two incidents where he had inadvertently fired the shotgun when he "couldn't

3

swear [that he] even pulled the trigger," or, indeed, "even touched the trigger." R. 17-13 (Morgan Ltr.) (Page ID #1684). In the letter, Morgan stated that he "wouldn't get back on a witness stand [and] swear it [the shotgun] didn't have a hair trigger on it." *Id.*

During closing arguments, the prosecution commented that, in its view, the case was straightforward and the jury should have no trouble coming to a guilty verdict. *See* R. 17-7 (Trial Tr. at 633) (Page ID #953) (commenting that it "will probably take [the jury] less time to come back with a verdict in this case than [counsel] took in his opening statement" because this "is clearly a smoking gun case"); *id.* at 642 (Page ID #962) (characterizing the case as "a prosecutor's dream"). In doing so, he denigrated the defense's theory that Perrin accidentally fired the gun and killed herself, opining "that's a bunch of bull." *Id.* at 608 (Page ID #928). If the defense's theory were true, he argued, this would be a "littering case" in which Wallace "had a panic attack and just dumped the body in the wrong place." *Id.* at 633 (Page ID #953). The prosecution characterized the defense's arguments as "ridiculous," concluding that "that dog won't hunt." *Id.*

The prosecutor also made several arguments regarding Wallace's character for violence. He argued that Wallace intended to shoot and kill somebody on the day that Perrin died, whether Perrin or somebody else. *Id.* at 579–81 (Page ID #899–901) (suggesting that Wallace went in search of Red to settle their differences with violence); *id.* at 608 (Page ID #928) ("Common sense will tell you he was out to shoot somebody on this day, ready, willing and able to do it."). Specifically, the prosecutor argued that Wallace's conduct on the day of the murder, both purchasing the shotgun and going in search of Red, "starts to give you an idea of Donald Wallace

and how Donald Wallace takes care of problems, how he resolves conflicts, how he resolves the problems in his life. . . . You folks know that you don't go talk to a man with a pump shotgun, sawed off shotgun, to resolve your differences. He wasn't going there to talk." *Id.* at 580–81 (Page ID #900–01). The prosecutor also argued that "[s]everal witnesses" were afraid of Wallace, *id.* at 584 (Page ID #904), although no witness testified that he or she feared Wallace. *See* R. 17-13 (P.C. Trial Ct. Op. at 33) (Page ID #1724).

Finally, the prosecutor also argued to the jury that Wallace's conduct immediately following the shooting demonstrated his guilt. He speculated that Wallace attempted to shoot Perrin a second time, although he missed, because "he was tired of trying to listen to her breathe through that blood, listening to that rasping sound. . . . He probably wanted to go ahead and finish her off." *Id.* at 597 (Page ID #917). He also argued that "the manner in which [Wallace] fled, . . . [and] how he acted" support a finding of premeditation. *Id.* at 607 (Page ID #927).

In his closing argument for the defense, Wallace's counsel began by pointing to inconsistencies in the testimony of the State's key witnesses, including the individuals who witnessed the shooting. As his central theory of the defense, he invited the jury to use its "common sense" to conclude that Perrin had "teasingly" pointed the gun at herself during a drug- and alcohol-fueled argument with Wallace, and that she had inadvertently fired and inflicted the fatal wound on herself. *Id.* at 620–21 (Page ID #940–41). Wallace's counsel argued that the witnesses could not have observed whether it was Wallace who fired the gun or whether it was Perrin herself.

After the conclusion of closing arguments, the court gave jury instructions regarding the probative value of post-offense flight and concealment of evidence with respect to the element of premeditation. *See id.* at 665–66 (Page ID #985–86). Wallace's counsel did not request any specific jury instructions regarding accident or self-defense, and none were given. *Id.* at 649–71 (Page ID #969–91). After deliberation, the jury found Wallace guilty of premeditated, first-degree murder. He was sentenced to life in prison.

Wallace appealed his conviction for first-degree murder, arguing that the evidence was insufficient to support a finding of premeditation. *See Wallace*, 1998 WL 670627, at *1. The Tennessee Court of Criminal Appeals concluded that the State had failed to establish the element of premeditation. *Id.* at *5. However, it found that there was sufficient proof that Wallace had "knowingly" caused Perrin's death. *Id.* at *6. The appellate court reversed Wallace's conviction for premeditated murder, vacated his life sentence, and remanded to the trial court to enter a judgment of conviction for second-degree murder and to resentence accordingly. *Id.*

The Presentence Report ("PSR") prepared for Wallace's resentencing lists eleven prior offenses: two misdemeanor convictions, one felony mail-fraud conviction, and eight felony convictions for possession of marijuana. R. 17-9 (PSR at 4–6) (Page ID #1091–93). The eight marijuana-based offenses, however, were eight counts of a single conviction. On these charges, the PSR stated that Wallace "was sentenced to a total of fifteen (15) years imprisonment, to be followed by two (2) years mandatory parole term, to be followed by a probation period of five (5) years." However, the PSR also noted that the sentence had been modified so that "the three (3) and five (5) years terms shall run concurrently, the period of imprisonment shall be followed

by four years mandatory parole . . . [and] the period of special parole shall be followed by one year of probation." *Id.* at 6 (Page ID #1093). Thus, Wallace's period of probation ended in 1993, ten years after the date of his conviction.

The prosecution argued that Wallace should be sentenced to the maximum term of imprisonment based on three enhancing factors: (1) that Wallace had a history of criminal convictions, (2) that Wallace "failed to comply with the conditions of a sentence involving release into the community," Tenn. Code Ann. § 40-35-114(8), because he was under "federal supervision" at the time of the murder, and (3) that Wallace used a firearm in the commission of the crime. R. 17-9 (Sentencing Hr'g Tr. at 26, 28–29) (Page ID #1130, 1132–33) (citing Tenn. Code Ann. § 40-35-114(1), (8), (9)). Wallace's counsel objected to the enhancement with respect to the second factor, but he did not argue that Wallace was not under probation at the time of the murder. *Id.* at 27 (Page ID #1131).

The court sentenced Wallace to twenty-five years of imprisonment. It found that the enhancement for "unwillingness to comply with the conditions of a sentence involving release in the community" was appropriate because Wallace "was within those periods of probation at the time of the commission of this offense." *Id.* at 31 (Page ID #1135) (quoting Tenn. Code Ann. § 40-35-114(8)). The court also found applicable the enhancement for use of a firearm during the commission of the offense. *Id.* at 32 (Page ID #1136). In addition, the court considered information in the PSR indicating that Wallace had escaped from the Correctional Center before sentencing. *Id.* at 34 (Page ID #1138); *see also id.* (PSR at 3) (Page ID #1090). In summation, the court stated:

> [W]hen I consider everything, the record, the trial, the way the crime happened, what led up to the commission of the crime, what the defendant did after the crime, what he's done since then, most of these things which I've touched upon, acquiring the shotgun, the going around looking for somebody else to kill, and this woman, the hiding the body, the hiding the car, the fleeing the scene, his escape after he was in custody, when I consider his prior convictions and all these things, I am convinced that in this particular case that this defendant should be and shall be sentenced and is sentenced to serve 25 years in the State Department of Corrections.

*Id.* (Sentencing Hr'g Tr. at 37–38) (Page ID #1141–42). Wallace's counsel did not object to any of the court's findings of fact. Wallace appealed his sentence, and the Tennessee Court of Criminal Appeals affirmed. *State v. Wallace*, No. M1999-00954-CCA-R3-CD, 1999 WL 1073705 (Tenn. Crim. App. Nov. 29, 1999).

**B. State Post-Conviction Proceedings**

On February 5, 2006, Wallace filed an amended petition for post-conviction relief, raising a variety of claims of ineffective assistance of counsel.[1] R. 17-13 (P.C. Am. Pet.) (Page ID #1651–58). Among those claims were the ones at issue in the present appeal. At the evidentiary hearing conducted by the post-conviction trial court, Wallace testified on his own behalf. His counsel did not present any other evidence, and did not enter into the record a transcript of the sentencing hearing. The post-conviction trial court denied all of Wallace's claims. R. 17-13 (P.C. Mem. Op.) (Page ID #1692–1751). With respect to his claims regarding ineffective assistance during the merits phase of the trial, the court concluded that, "although Petitioner's trial counsel may have been ineffective in several particulars . . . , these acts of ineffectiveness did not result in prejudice to Petitioner especially in light of the overwhelming

---

[1]In 1999, Wallace filed a petition for post-conviction relief that is not relevant to the issues in the instant appeal. *See Wallace v. State*, 121 S.W.3d 652 (Tenn. 2003).

proof of [his] guilt. . . . It cannot be said that Petitioner's trial failed to produce a reliable result." *Id.* at 54–55 (Page ID #1745–46). However, with respect to Wallace's claims regarding ineffective assistance during the sentencing phase, the court was unable to assess whether counsel was ineffective because the transcript of the sentencing hearing was not introduced during the post-conviction hearing. *Id.* at 43–44, 53–54 (Page ID #1734–35, 1744–45). The post-conviction court, noting that it was Wallace's burden to introduce evidence sufficient to prove his claims, dismissed the sentencing-related claims as without merit.

Wallace appealed the post-conviction trial court's ruling. His counsel filed a brief that raised claims of prosecutorial misconduct and ineffective assistance of counsel. However, despite Wallace's instructions, counsel refused to brief all of the claims of ineffective assistance of counsel raised in Wallace's petition. R. 17-12 (P.C. Appellant Br.) (Page ID #1446–64). Wallace drafted a pro se supplemental brief[2] raising all of the claims of ineffective assistance relevant on this appeal, which counsel attached as an appendix to his brief. *Id.* at 15 (Page ID #1463).

The Tennessee Court of Criminal Appeals affirmed the post-conviction trial court's dismissal of Wallace's claims. It explicitly considered the seven grounds of ineffective assistance raised in the brief filed by Wallace's counsel, including the claim that trial counsel was ineffective for failing to object to the prosecutor's improper statements during closing

---

[2]Wallace's pro se supplemental brief does not appear in the record. However, neither party disputes that his brief was in fact filed as an appendix to his counsel's brief or that it raised the claims at issue in the instant appeal. Wallace describes the contents of the supplemental brief in his pro se application for permission to appeal to the Tennessee Supreme Court. *See* R. 17-12 (App. for Permission to Appeal) (Page ID #1503–28).

argument. *Wallace v. State*, No. M2008-01857-CCA-R3-PC, 2009 WL 3031261, at *6–7 (Tenn. Crim. App. Sept. 23, 2009). The court did not mention any of the additional claims raised by Wallace in his supplemental pro se brief.

## C. Federal Habeas Proceedings

On July 30, 2010, Wallace filed an amended petition for a writ of habeas corpus in federal district court, claiming ineffective assistance of counsel and prosecutorial misconduct, among other things. R. 14 (Am. Habeas Pet.) (Page ID #53–71). The district court denied Wallace's petition on all claims,[3] and declined to issue a certificate of appealability ("COA"). R. 38 (D. Ct. Mem. at 23) (Page ID # 2025); R. 43 (D. Ct. Order) (Page ID #2057). Wallace filed a notice of appeal, which we construed as an application for a COA. R. 44 (COA Order at 2) (Page ID #2059). We granted a COA as to four specific claims of ineffective assistance of counsel: (1) failure to present evidence that the gun used to kill the victim had a "hair trigger," (2) failure to request jury instructions relating to accident and self-defense, (3) failure to object to improper remarks made during the prosecution's closing argument, and (4) failure to object to errors in the presentence report. We now review Wallace's petition for a writ of habeas corpus on these claims.

---

[3]Wallace notes some inconsistency in the district court's analysis. The district court first concluded that all four claims at issue in the instant appeal were procedurally defaulted. R. 38 (D. Ct. Mem. at 7) (Page ID #2009). However, the district court later addressed on the merits the claim relating to counsel's failure to object to improper prosecutorial remarks. *Id.* at 15–18 (Page ID #2017–20). Because we do not afford any deference to the district court's determination, *Bigelow v. Williams*, 367 F.3d 562, 569 (6th Cir. 2004), we need not untangle the district court's admittedly confusing analysis.

## II. STANDARD OF REVIEW

We review de novo a district court's denial of a petition for a writ of habeas corpus. *Bigelow v. Williams*, 367 F.3d 562, 569 (6th Cir. 2004). "'The district court's determination regarding procedural default and its resolution of whether "cause and prejudice" exist to excuse the default are [likewise] subject to de novo review.'" *Cvijetinovic v. Eberlin*, 617 F.3d 833, 836 (6th Cir. 2010) (quoting *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004)). Because Wallace filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 2006 ("AEDPA"), we apply AEDPA standards of review to Wallace's claims.

Before a federal court sitting in habeas may review a petitioner's claim, it must assure itself that the petitioner "has exhausted the remedies available in the courts of the State" or that the State's process is unavailable or inadequate to protect the petitioner's rights. 28 U.S.C. § 2254(b). A claim has been "exhausted" if the highest available state court was "given a full and fair opportunity to rule on the petitioner's claim[]." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). That is, the claim must be presented in a way that allows the state court to review the federal claim on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

We also consider a claim "exhausted," but procedurally barred from federal habeas review, if it was never actually presented to the highest available state court and the state enforces a procedural rule which prohibits its courts from now considering the claim. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A habeas petitioner procedurally defaults a claim when (1) he fails to comply with a state procedural rule applicable to his claim, (2) the state procedural rule is regularly enforced, (3) the state procedural rule is an "adequate and

independent" state ground foreclosing review of the federal constitutional claim, and (4) he cannot show cause and prejudice to excuse his failure to comply. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A federal habeas court may not reach the merits of a procedurally defaulted claim.

If we find that a petitioner has exhausted his claims before the state courts, we may then proceed to assessing the claims on the merits. Under AEDPA, we apply an extremely deferential standard of review "to any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Accordingly, we may not grant a petition for a writ of habeas corpus unless the state court's determination of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* A state court's decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application" of clearly established law "if [the court] correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014). The "unreasonable application" prong "provides a remedy for instances in which a state court unreasonably *applies* th[e Supreme] Court's precedent [but] it does not require state courts to *extend* that precedent or license federal

12

courts to treat the failure to do so as error." *Id.* A federal habeas court may not provide relief when the state court was merely incorrect; rather we may grant relief only when the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). We consider "the last reasoned opinion of the state courts" when assessing whether the petitioner's claims were denied in compliance with federal law. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Ylst*, 501 U.S. at 803).

We now consider only the claims in Wallace's petition for a writ of habeas corpus that assert that his counsel rendered ineffective assistance during his trial and sentencing. All criminal defendants are entitled to receive "reasonably effective assistance" of counsel, such that "counsel will fulfill the role in the adversary process that the [Sixth] Amendment envisions." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Counsel's assistance is constitutionally ineffective when (1) his performance was "deficient" because he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) his "deficient performance prejudiced the defense" in a way that "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant bears the burden of demonstrating deficient performance by showing "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. He must demonstrate that he has been prejudiced by his counsel's deficiencies by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### III.  DEFENSE-THEORY CLAIMS

Wallace argues that his trial counsel provided constitutionally ineffective assistance by (1) failing to present evidence that the shotgun used to kill Perrin had a "hair trigger" and (2) failing to request jury instructions regarding accident and self-defense.  We will consider these claims together because they relate to the same substantive point—that trial counsel should have argued the theory that Wallace accidentally shot Perrin in a struggle over the shotgun—and they present identical procedural issues.  For ease of reference, we will refer to these claims as Wallace's "defense-theory claims."

The State argues that we may not consider Wallace's defense-theory claims because he procedurally defaulted the claims by failing to raise them before the state post-conviction appellate court.  *See Coleman*, 501 U.S. at 732.  Wallace's counsel failed to include the defense-theory claims in his brief before the post-conviction appellate court.  R. 17-12 (P.C. Appellant Br.) (Page ID #1446–64).  However, counsel attached Wallace's pro se "supplemental brief" as an appendix to his own brief because he "fe[lt] compelled to submit this document" after reviewing the relevant court rules.  *Id.* at 15 (Page ID #1463).  The post-conviction appellate court did not explicitly comment upon the appended pro se supplemental brief, instead choosing to address only the claims advanced by Wallace's counsel.  *Wallace v. State*, 2009 WL 3031261, at *6–7.  Because we ordinarily "presume[] that the state court adjudicated [any] claim [presented to it] on the merits in the absence of any indication or state-law procedural principles to the contrary," *Richter*, 131 S. Ct. at 784–85, we must first determine whether Wallace's

defense-theory claims were "presented" to the post-conviction appellate court through his supplemental brief.

We conclude that Wallace's defense-theory claims were not fairly presented to the appropriate state court because a Tennessee procedural rule barred consideration of his supplemental pro se brief. In Tennessee, a petitioner represented by either retained or appointed counsel may not file pro se briefs. *See State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976); *see also Williams v. State*, 44 S.W.3d 464, 469 (Tenn. 2001) (barring defendants from "representing themselves while simultaneously being represented by counsel"). State courts regularly enforce this rule and decline to consider pro se filings from represented defendants. *See Hill v. Carlton*, 399 F. App'x 38 (6th Cir. 2010).[4] Moreover, the rule is an adequate and independent state ground sufficient to foreclose the state court's review of Wallace's defense-theory claims. Therefore, the defense-theory claims are procedurally defaulted. *See Maupin*, 785 F.2d at 138.

Wallace argues that, notwithstanding the Tennessee procedural rule, his defense-theory claims are not defaulted because his pro se brief fairly presented the claims to the post-conviction appellate court. Wallace relies heavily on *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997). In *Clemmons*, the court held that a petitioner's claim was fairly presented when, after the petitioner's counsel refused to raise the claim in his brief, the petitioner filed a separate supplemental brief. The court reasoned that it was unclear "what else [the petitioner] could have

---

[4]There are some exceptional circumstances in which Tennessee courts have allowed a represented defendant to file a pro se brief. *See Smith v. State*, 757 S.W.2d 14, 16 (Tenn. Crim. App. 1988). However, "[o]ccasional exceptions . . . do not call a rule's validity into question." *Hill v. Carlton*, 399 F. App'x 38, 44 (6th Cir. 2010) (citing *Scott v. Mitchell*, 209 F.3d 854, 869 (6th Cir. 2000)).

done, as a practical matter, to present the claim to [the Missouri state court] for decision on the merits." *Id.* at 948. *Clemmons* is easily distinguishable from the instant case because "[n]o rule of court or reported Missouri case . . . specifies the circumstances under which Missouri appellate courts allow pro se briefs." *Id.* at 948 n.3. Accordingly, the petitioner's claim in *Clemmons* was not barred because of "a regularly applied rule of state procedural law," and was not procedurally defaulted. *Id.* By contrast, Tennessee courts follow the rule that petitioners may not file pro se briefs while they are represented by counsel. Therefore, *Clemmons* offers no support to Wallace's argument that his claims were not procedurally barred.

Wallace makes a final argument that his supplemental brief was not truly a "pro se" pleading because it was appended to his counsel's brief and filed by counsel. Were we to consider this argument in the first instance, we might find some merit to it. After all, Wallace's counsel filed his supplemental brief as an appendix to counsel's brief because he felt "compelled" to do so by court and ethical rules. R. 17-12 (P.C. Appellant Br. at 15) (Page ID #1463). However, it is not within our authority as "a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Tennessee courts are at liberty to interpret Wallace's supplemental brief as a pro se filing prohibited by state procedural rules, and it appears that they did so here.

The state post-conviction appellate court did not explicitly state that it declined to consider Wallace's supplemental pro se brief. However, it responded in detail to claims raised by Wallace's counsel, *see Wallace v. State*, 2009 WL 3031261, at *6 (listing the seven ineffective-assistance claims raised in counsel's brief), without even mentioning Wallace's

16

supplemental brief or any of the claims raised therein. We can infer only that the court applied the Tennessee procedural rule barring consideration of pro se filings made by represented petitioners. *See Hill*, 399 F. App'x at 43 (concluding that a pro se petition was rejected when the Tennessee court, in denying the petition, addressed only the claims raised by counsel). We are sympathetic to the fact that Wallace faced a difficult predicament when his counsel refused to include his non-frivolous claims on appeal to the post-conviction appellate court. Nonetheless, we must conclude that Wallace's supplemental pro se brief did not "fairly present" his defense-theory claims in a way that would allow the state court to address those claims on the merits. Accordingly, we conclude that Wallace's defense-theory claims are procedurally barred.

Once we have concluded that a claim was procedurally barred by a state rule, we may consider the claim on the merits only if the petitioner establishes cause and prejudice to excuse the default or demonstrates that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Wallace argues that the ineffective assistance of his post-conviction counsel constitutes cause for his failure to exhaust his defense-theory claims before the post-conviction court. Generally, an attorney's ineffective assistance in post-conviction proceedings does not qualify as "cause" to excuse procedural default of his constitutional claims. *Coleman*, 501 U.S. 722, 755 (1991). However, the Supreme Court has carved out an exception to this general rule for claims of ineffective assistance of counsel when those claims may be raised for the first time only in post-conviction proceedings. *See Trevino v. Thaler*, 133 S. Ct. 1911 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

In *Martinez*, the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320. "Initial-review collateral proceedings" provide the first opportunity for the state court to consider a particular claim on the merits because the claim could not have been raised on direct appeal. Thus, they are "in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317. The Court created this narrow exception to the *Coleman* procedural-default rule because "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. . . . And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims." *Id.* at 1316.

In *Trevino*, the Supreme Court extended the *Martinez* rule to states whose procedural structure makes it "virtually impossible" for a defendant to present an ineffective-assistance claim on direct appeal, even if there is no outright requirement that a defendant refrain from doing so. 133 S. Ct. at 1915. Tennessee's procedural framework directs defendants to file ineffective-assistance claims in post-conviction proceedings rather than on direct appeal, and thus it falls into the *Martinez-Trevino* framework. *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014).

Wallace claims that his counsel at the post-conviction *appellate* proceeding was ineffective for failing to raise the relevant ineffective-assistance claims. Ineffective assistance of counsel at this stage of the case cannot constitute cause to excuse the procedural default because it is not an *initial-review* collateral proceeding. Although *Martinez* and *Trevino* expanded the class of cases in which a petitioner can establish cause to excuse the procedural default of ineffective-assistance claims, the Supreme Court cautioned that the rule "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1320. "While counsel's errors in [other levels of post-conviction] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 1316. In the instant case, Wallace's claims were properly presented to the post-conviction trial court, which denied all of his claims on the merits. Thus, the alleged ineffective assistance of Wallace's post-conviction appellate counsel is not cause to excuse the procedural default of his defense-theory claims, and we may not consider these claims on the merits.

## IV. SENTENCING CLAIM

In his next claim, Wallace argues that his trial counsel provided ineffective assistance by failing to ensure that the presentence report was accurate. In determining that two enhancement factors applied to Wallace's sentence, the sentencing court made several errors based on information in the PSR, including tallying Wallace's prior convictions incorrectly and miscalculating the length of Wallace's probationary period on the prior convictions. *See* R. 17-9

(Sentencing Hr'g Tr. at 31–32) (Page ID #1135–36). Wallace raised his sentencing claim in his petition for state post-conviction relief. R. 17-13 (P.C. Am. Pet. at 6) (Page ID #1656). However, during the post-conviction evidentiary hearing, Wallace's counsel did not introduce into evidence a transcript of the sentencing hearing. The post-conviction trial court denied relief on the sentencing claim because it could not, without the sentencing hearing transcript, "determine whether Petitioner's allegations are true or not." R. 17-13 (P.C. Trial Ct. Op. at 43) (Page ID #1734). Thus, Wallace failed to meet his "burden of proving the allegations of fact by clear and convincing evidence." *Id.* at 43–44 (Page ID #1734–35); *see also id.* at 53–54 (Page ID #1744–45).

As with the defense-theory claims, Wallace failed to raise his sentencing claim before the post-conviction appellate court because his counsel did not brief the claim. Thus, Wallace's sentencing claim is procedurally defaulted, and we may consider it only if he can establish cause for his failure to comply with state procedural rules and prejudice arising from the alleged ineffective assistance of counsel. Wallace argues that the ineffective assistance of post-conviction counsel provides cause to excuse his procedural default. As we discussed in relation to the defense-theory claims, the ineffective assistance of Wallace's post-conviction appellate counsel is not cause to excuse the default of his claims. However, Wallace makes a slightly different argument with respect to his sentencing claim: he asserts that his post-conviction *trial* counsel also rendered ineffective assistance by failing to enter a copy of the sentencing hearing transcript into evidence.

The ineffective assistance of post-conviction trial counsel may constitute cause to excuse the procedural default of ineffective-assistance claims in Tennessee. *See Sutton*, 745 F.3d at 795–96; *see also Trevino*, 133 S. Ct. at 1915; *Martinez*, 132 S. Ct. at 1315. But the ineffective assistance of post-conviction trial counsel, as a logical matter, does not *cause* a petitioner's failure to comply with state procedural rules on a post-conviction appeal. That is, even if Wallace's post-conviction trial counsel was ineffective, that would be cause to excuse only Wallace's failure to comply with procedural rules before the post-conviction trial court. It does not excuse his post-conviction appellate counsel's failure to comply with unrelated procedural rules before the post-conviction appellate courts. And it is non-compliance with a state procedural rule in the post-conviction appellate court that created the procedural default in this aspect of the case. The post-conviction trial court denied Wallace's properly raised sentencing claim on the merits, concluding that Wallace had failed to meet his burden of proving his allegations that his trial counsel provided ineffective assistance. R. 17-13 (P.C. Trial Ct. Op. at 43–44, 53–54) (Page ID #1734–35, 1744–45). Thus, Wallace had the opportunity to present his ineffective-assistance claim to at least one court for resolution. *See Martinez*, 132 S. Ct. at 1316.

The Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim, *see id.* at 1315, and Wallace does not argue it as such here. Ineffective assistance of post-conviction counsel is relevant only if it is cause for failure to comply with a procedural rule. Wallace has not shown that the error of his post-conviction trial counsel caused his non-compliance with a procedural rule in the post-conviction appellate court.

21

Accordingly, his sentencing claim is procedurally defaulted and we may not consider it on the merits.

## V. IMPROPER-REMARKS CLAIM

Wallace claims that his trial counsel's performance was also constitutionally ineffective because counsel failed to object to the prosecutor's improper remarks. Wallace identifies three categories of improper remarks made by the prosecutor during closing argument: (1) comments emphasizing the strength of the State's case and denigrating the defense's theory of the case, (2) comments that misrepresented the testimony of the witnesses, and (3) comments that mischaracterized the law as applied to the evidence produced at trial. In its decision on the post-conviction appeal, the Tennessee Court of Criminal Appeals recognized that Wallace's "brief contain[ed] a number of grounds on which he believes trial counsel was deficient, including trial counsel's failure to . . . object to the State's expressions of opinion on witness credibility . . . [and] object to the State's expression of opinion regarding the strength of evidence against the Petitioner relative to similar cases." *Wallace*, 2009 WL 3031261, at *6.[5]

With respect to the improper-remarks claim, the only claim of ineffective assistance of counsel that was properly presented, the Tennessee court denied relief:

---

[5]The state court did not consider the parts of Wallace's improper-remarks claims based on counsel's failure to object to the prosecutor's mischaracterizations of the evidence and the law because those claims were not presented in his counsel's brief. As we discussed in relation to Wallace's defense-theory claims, the alleged deficient performance of his post-conviction appellate counsel is not cause to excuse the procedural default of the claims Wallace included only in his supplemental pro se brief. Accordingly, we do not reach the merits on the portion of Wallace's improper-remarks claim that were procedurally defaulted. For ease of reference, we will refer to the portions of this claim that were presented to the post-conviction appellate court as Wallace's "improper-remarks claim."

> We decline to address the issue of whether trial counsel was deficient in his representation on these issues. The Petitioner has simply not demonstrated that the result of his trial would have been different but for the alleged errors. After our review of the record, we cannot conclude that the post-conviction court erred in holding that the Petitioner was not prejudiced by any alleged deficient representation. The State presented a strong case against the Petitioner, including the testimony of several eyewitnesses to the shooting. Other witnesses established that the Petitioner was with the victim in a vehicle matching the description of the one seen at J.T.'s Bait Shop and that he had a shotgun with him. Witnesses also established that the victim's body had been driven to a remote location and discarded. Based on our review of the record, we cannot conclude that the trial court erred in finding that the Petitioner was not entitled to post-conviction relief based on the ineffective assistance of counsel.

*Id.* at *7. The state court adjudicated the improper-remarks claim on the merits, and we apply AEDPA deference to its determination. However, "[w]hen a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court." *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012). Because the state court "decline[d] to address the issue of whether trial counsel was deficient in his representation," *Wallace*, 2009 WL 3031261, at *7, and instead ruled that Wallace had not demonstrated that he was prejudiced by his counsel's errors, we review the deficiency prong of this claim de novo and the prejudice prong with AEDPA deference.

Wallace identifies several remarks made by the prosecutor during closing argument that he claims were improper because they denigrated his theory of the case while emphasizing the strength of the prosecution's case:

- "Common sense will tell you that regardless of what he wanted to say about . . . this being an accident and [Perrin] picking up the gun and

23

> playing with it, that's a bunch of bull."  R. 17-7 (Trial Tr. at 608) (Page ID #928).
> - "[The defense is] trying to put the most favorable light on what is clearly a smoking gun case."  *Id.* at 632–33 (Page ID #952–53).
> - "I submit to you that it will probably take you less time to come back with a verdict in this case than [counsel] took in his opening statement, because the facts are not that hard in this case."  *Id.* at 633 (Page ID #953).
> - "If I adopted [defense counsel's] circumstances here, we ought to be trying a littering case.  The only thing wrong that happened in this case, was that his client had a panic attack and just dumped the body in the wrong place. . . .  [I]t's ridiculous and that dog won't hunt."  *Id.*
> - "I call it a smoking gun case, it's kind of a prosecutor's dream."  *Id.* at 642 (Page ID #962).

Wallace argues that his counsel's failure to object to these improper comments was constitutionally deficient performance, which deprived him of a fair trial.  *Strickland*, 466 U.S. at 687–88.  Wallace claims that the prosecutor's improper remarks that Wallace's defense theory was "ridiculous" and "a bunch of bull," passing without objection, were so outrageous that they created a "reasonable probability" that "the result of the proceedings would have been different." *Id.* at 694.  The two prongs of the *Strickland* test need not be applied in order, and if the defendant fails to make the requisite showing on one prong, we need not address the other. *Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001).  In this case, it is not necessary to consider whether Wallace has demonstrated that his counsel's performance was deficient because he cannot satisfy his burden on the prejudice prong—that is, he cannot show that the state court's determination that he was not prejudiced by his counsel's error was contrary to or an unreasonable application of federal law.

The state court's analysis was imprecise, to be sure.  The state court concluded that, in light of the eyewitness evidence, the outcome of Wallace's trial would not have been different,

24

even if his counsel had objected to the prosecutor's improper remarks. *Wallace*, 2009 WL 3031261, at *7. The state court's conclusion is problematic for two reasons: First, the state court applied the wrong standard. The proper inquiry is not whether "the result of [Wallace's] trial would have been different but for the alleged errors," *id.*, but whether there is a "reasonable probability" that the outcome of the trial would have been different absent counsel's errors. *Strickland*, 466 U.S. at 695. Second, the state court's reasoning is unpersuasive because the evidence identified by the state court demonstrates only that Wallace was involved in Perrin's death. The prosecutor's remarks, on the other hand, improperly undercut Wallace's theory that he did not have the mens rea necessary to be convicted for the *intentional* killing of Perrin; he does not dispute that he was in some way involved in her death. Thus, the eyewitness testimony relied upon by the state court does not truly answer Wallace's complaint that the prosecutor improperly denigrated his accident-based theory of defense. We are not convinced that the state court reasonably applied Supreme Court precedent when denying Wallace's claim. However, we are not limited to considering only the state court's articulated reasons for its decision; rather, "the habeas petitioner's burden . . . must be met by showing there was *no reasonable basis* for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

We conclude that there was a reasonable basis for the state court to deny relief on Wallace's improper-remarks claim. The defense theory argued by Wallace's counsel—that Perrin inadvertently shot herself while "teasing" Wallace—was flatly inconsistent with the testimony of the medical examiner, who stated that it would have been very difficult for Perrin to have shot herself. *Wallace*, 1998 WL 670627, at *3. Thus, there was strong evidence to

25

undermine the defense theory presented to the jury, and it is possible that the jury concluded on its own that Wallace's theory of defense had no merit. Although the prosecutor's comment that the defense theory was "ridiculous" certainly may have been improper, *see United States v. Young*, 470 U.S. 1, 17–19 (1985) (finding that the prosecutor's expressions of personal opinion concerning the guilt of the defendant were improper), fairminded jurists could conclude that it is not reasonably probable that the outcome of the trial would have changed had Wallace's counsel objected. The state court's conclusion that Wallace could not demonstrate that he was prejudiced by his counsel's failure to object to the prosecutor's comments was not contrary to or an unreasonable application of the Supreme Court's precedent. Accordingly, Wallace is not entitled to relief on his improper-remarks claim.

## VI. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Wallace's petition for a writ of habeas corpus.

**ARTHUR J. TARNOW, Senior District Judge, concurring in result.** The purpose of exhaustion requirements is to give the state courts an opportunity to enforce the requirements of the United States Constitution. It is my view that due process, at the very least, requires Tennessee courts to review issues that are raised by represented parties and submitted by their attorneys as happened here. Petitioner's attorney undoubtedly intended the state court to review Petitioner's arguments when he appended and filed Petitioner's brief because he "fe[lt] compelled to submit" it. Given the state court's silence on why it did not address Petitioner's appended brief and the relevant Tennessee rule, it seems the only obstacle to state court review of Petitioner's theories was that no one took the time to re-type Petitioner's brief. That is not a constitutionally justifiable basis to deny post-conviction appellate review. In spite of his counsel's intentions to present certain theories to the post-conviction state appellate court, by operation of Tennessee's rule alone, Petitioner is in a worse position with the assistance of counsel than without. In this case and analogous cases, I would hold that petitioners' claims are not procedurally defaulted. In this case, however, I concur in result because there is no merit to the issues that Petitioner raised, but the state court did not address.